## FOGARTY v. UNITED STATES.
### No. 13857.

United States Court of Appeals
Eighth Circuit.

Aug. 24, 1949.

Appeal from the United States District Court for the District of Minnesota; Robert C Bell, Judge.

George M. Shkoler, Chicago, Ill. (Blum & Jacobson, of Chicago, Ill., and Rollo N. Chaffee, Duluth, Minn., on the brief), for appellant.

Hubert H. Margolies, Atty., Department of Justice, of Washington, D. C. (H. G. Morison, Asst. Atty. Gen., John W. Graff, U. S. Atty., James J. Giblin, Asst. U. S. Atty., St. Paul, Minn., and Edward H. Hickey, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellant, as Trustee in Bankruptcy of Inland Waterways, Inc., brought this action under the War Contracts Hardship Claims Act of August 7, 1946, 60 Stat. 902, 41 U.S.C.A. § 106 Note, popularly known as the Lucas Act, to recover of the United States $328,804.42 as losses alleged to have been sustained by Waterways in the performance of contracts with the Navy Department. The motion of the United States for a summary judgment, based upon the allegations of the complaint and a written agreement settling certain matters in dispute between the parties, approved by the District Court in bankruptcy, was sustained. Appellant has appealed from the judgment entered on the motion. The question presented is the interpretation of the War Contracts Hardship Claims Act and of Executive Order 9786, Oct. 5, 1946, promulgated pursuant to the Act.

The facts are undisputed. Waterways entered into several contracts with the Navy Department for the construction of submarine chasers and plane rearming boats. The first of these contracts was dated September 18, 1941, and the last, June 30, 1942. Waterways was financed with Government funds. In a relatively short time after beginning operations under the contracts, Waterways encountered financial difficulties, and in December 1942 filed a petition in the District Court for reorganization under the bankruptcy law. A trustee was appointed to take charge of Waterways' property and affairs.

Little if any progress was made in the performance of the contracts during the management of the trustee. On May 5, 1943, the United States filed claims against Waterways in the reorganization proceedings, and on July 31, 1943, the trustee filed counterclaims against the United States. The trial court described the situation at this time as follows:

"A few ships had been built and several were in the course of construction. Much of the work was incomplete and defective. Labor claims having priority under the law were pressing. Creditors and all parties concerned were desirous of effecting a settlement with the government for the funds claimed due the bankrupt under the contracts."

On February 20, 1945, the claims of Waterways against the Government and the claims of the Government against Waterways were settled by a compromise agreement which was approved by the bankruptcy court. Under the agreement the United States paid the trustee approximately $16,000 in complete liquidation of all claims. The agreement provides:

"The Trustee, for himself, in his capacity as trustee, for his successors, and on behalf of the Contractor, its successors and assigns, remises, releases and forever discharges the Government, its officers, agents and employees and the Government remises, releases and forever discharges the Trustee and his successors and the Contractor, its successors and assigns of and from all debts, dues, sums of money, accounts, reckonings, actions, proceedings, claims and demands whatsoever in law and in equity arising under or as a result of the aforesaid contracts and transactions."

"The aforesaid contracts and transactions" are described in detail in the compromise agreement. The claims asserted against the United States by Waterways were claims for payments due Waterways under the contracts with the Navy Department and for the value of partially completed plane rearming boats and materials and equipment for their construction which the Government had taken under requisition, and for expenses incurred in the con-

servation of this property for the United States. The claims of the United States against Waterways included the unpaid balance of a loan to Waterways which the Government had guaranteed, and which it had been compelled to purchase on the default of Waterways, together with interest; the cost incurred by the United States in the completion of incomplete and defective work on submarine chasers; and the decreased cost of performance to Waterways resulting from changes in the plans and specifications for the work being done under the contracts.

After the approval of the compromise settlement by the bankruptcy court and the payment by the United States of the balance due the trustee under that settlement, the trustee filed a claim with the Navy Department under the War Contracts Hardship Claims Act for the "loss" sustained by Waterways in the performance of its contracts with the Navy Department, alleging that the loss was sustained through no fault or negligence on the part of the claimant and that no other relief had been sought from the United States with respect to the loss claimed "other than that as may have been had in proceedings for the reorganization of the claimant under Chapter X" of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. This claim was denied by the Navy Department's War Contract Relief Board on July 3, 1947, and this action for review of the decision of the Navy Department was instituted in the District Court.

The District Court granted the summary judgment from which this appeal is taken on the ground that it conclusively appeared that appellant had not filed with the Navy Department a written request for relief within the meaning of the Act, on or before August 14, 1945, as expressly required by section 3 of the Act and by paragraph 204 of Executive Order 9786; and also on the ground that, conceding that the evidence established that appellant had filed with the Navy Department the required timely written request for relief, further relief under the Act was barred by the settlement of appellant's claims against the Navy Department approved by the bank-

ruptcy court on February 20, 1945. Appellant assigns both rulings of the District Court as error.

Since we have reached the conclusion that the trial court was correct in its ruling on the first question, we do not reach the second. For, if, as we hold, appellant never on or before August 14, 1945, filed a written request for relief under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., it follows that there was never "a previous settlement" (sec. 3 of the Act of August 7, 1946) of such a claim; and the validity of that part of paragraph 204 of Executive Order 9786 providing that no claim under the Act shall be considered if final action with respect thereto had been taken on or before August 14, 1945, is not involved in the present case. The settlement of February 20, 1945, was not a settlement of claims for relief under the First War Powers Act, but was a final adjudication by the bankruptcy court of appellant's claims against the Navy Department for compensation payable under its contracts with the Navy Department and for the value of property of the appellant taken under requisition by the United States.

The War Contracts Hardship Claims Act is entitled "An Act to authorize relief in certain cases where work, supplies, or services have been furnished for the Government under contracts during the war." So far as material to decision in the present controversy, the Act provides:

"Sec. 1. That where work, supplies, or services have been furnished between September 16, 1940, and August 14, 1945, under a contract or subcontract, for any department or agency of the Government which prior to the latter date was authorized to enter into contracts and amendments or modifications of contracts under section 201 of the First War Powers Act, 1941 (50 U.S.C., Supp. IV, app., sec. 611), such departments and agencies are hereby authorized, in accordance with regulations to be prescribed by the President within sixty days after the date of approval of this Act, to consider, adjust, and settle equitable claims of contractors, including subcontractors and materialmen performing work or furnishing supplies or services to the contractor or another subcontractor, for losses (not including diminution of anticipated profits) incurred between September 16, 1940, and August 14, 1945, without fault or negligence on their part in the performance of such contracts or subcontracts. Settlement of such claims shall be made or approved in each case by the head of the department or agency concerned or by a central authority therein designated by such head.

"Sec. 2. (a) In arriving at a fair and equitable settlement of claims under this Act, the respective departments and agencies shall not allow any amount in excess of the amount of the net loss (less the amount of any relief granted subsequent to the establishment of such loss) on all contracts and subcontracts held by the claimant under which work, supplies or services were furnished for the Government between September 16, 1940, and August 14, 1945, and shall consider with respect to such contracts and subcontracts (1) action taken under the Renegotiation Act (50 U.S.C., Supp. IV, app., sec. 1191), the Contract Settlement Act of 1944 (41 U.S.C., Supp. IV, sec. 101-125), or similar legislation; (2) relief granted under section 201 of the First War Powers Act, 1941, or otherwise; and (3) relief proposed to be granted by any other department or agency under this Act. * * *

"Sec. 3. Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, and shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act."

Sec. 6, as amended provides for review by the Federal courts of departmental action on claims under the Act.

Pursuant to section 1 of the Act, the President on October 5, 1946, made Executive Order 9786, 11 F.R. 11553, entitled "Regulations Governing the Consideration, Adjustment, and Settlement of Claims Under Public Law 657, Approved August 7, 1946." Parts of the Executive Order material here are as follows:

"Part I—Definitions

\* \* \* \* \* \*

"101.7 The term 'cost of performance' means the reasonable and necessary cost to contractor or subcontractor of work, supplies, or services furnished during the statutory period pursuant to a contract or subcontract, determined in accordance with the accounting practices of the contractor or subcontractor consistently applied during performance of the contract or subcontract, provided such practices accord with recognized commercial accounting practices. Such cost shall include, to the extent reasonable and necessary, direct costs and a properly allocable proportion of indirect costs, but shall not include the following items:

\* \* \* \* \* \*

"n. Any item of cost which the contract or subcontract or negotiations therefor expressly contemplated would not be reimbursed or compensated or allowed for.

"101.8 The term 'contract price' means the aggregate of all amounts (before taxes and statutory renegotiation) paid or payable to a contractor or subcontractor for work, supplies, or services furnished during the statutory period pursuant to a contract or subcontract, including any amounts paid or payable pursuant to any amendment, adjustment, or settlement of or on account of such contract or subcontract under the First War Powers Act, 1941, the Contract Settlement Act of 1944 (41 U.S.C., Supp. IV, secs. 101–125), or otherwise.

"101.9 The term 'loss' means the amount by which the cost of performance of a contract or subcontract exceeds the contract price thereof.

\* \* \* \* \* \*

"101.11 The term 'net loss' means the amount by which the aggregate of the costs of performance under all contracts and subcontracts exceeds the aggregate of the contract prices under all contracts and subcontracts, after giving appropriate effect to action in renegotiation proceedings in respect of the statutory period.

"101.12 The Term 'claim' means a claim for relief under the Act.

\* \* \* \* \* \*

"Part II—Filing of Claims

"201. No claim shall be received or considered by any war agency unless properly filed in accordance with the Act and these Regulations on or before February, 1947.

\* \* \* \* \* \*

"204. No claim for loss under any contract or subcontract of a war agency shall be received or considered unless a written request for relief with respect thereto was filed with such war agency on or before August 14, 1945; and no claim shall be considered if final action with respect thereto was taken on or before that date.

\* \* \* \* \* \*

"Part III—Settlement of Claims

\* \* \* \* \* \*

"304. No claim shall be allowed by any war agency except if and to the extent that the war agency finds that the claim is (a) equitable under all the circumstances and (b) for losses incurred without fault or negligence on the part of the claimant.

"305. No claimant shall be granted relief under the Act and these Regulations in any amount in excess of the amount of the net loss (less the amount of any relief granted subsequent to the establishment of such loss) on all contracts and subcontracts held by the claimant pursuant to which work, supplies, or services were furnished for the Government during the statutory period."

Section 201 of the Act of December 18, 1941, 55 Stat. 839, 50 U.S.C.A.Appendix, § 611, known as the First War Powers Act,

"The President may authorize any department or agency of the Government ex-provides:

ercising functions in connection with the prosecution of the war effort, in accordance with regulations prescribed by the President for the protection of the interests of the Government, to enter into contracts and into amendments or modifications of contracts heretofore or hereafter made and to make advance, progress and other payments thereon, without regard to the provisions of law relating to the making, performance, amendment, or modification of contracts whenever he deems such action would facilitate the prosecution of the war * * *."

The First War Powers Act was entitled "An Act to expedite the prosecution of the war effort." The Congressional purpose is made clear by the first section of the Act. The powers therein conferred upon the President are conferred "for the national security and defense, for the successful prosecution of the war, for the support and maintenance of the Army and Navy, for the better utilization of resources and industries, and for the more effective exercise and more efficient administration by the President of his powers as Commander in Chief of the Army and Navy."

The documents upon which appellant relied as written requests for relief under the Act of August 7, 1946, filed with the Navy Department on or before August 14, 1945, were all before the trial court on the motion for summary judgment. They can not be accepted as written requests for relief from losses on the Waterways contracts within the meaning of the Act. They are the identical claims of Waterways against the Navy Department which were finally settled by the agreement of February 20, 1945, approved by the bankruptcy court. They are in no sense claims for "losses * * * incurred * * * without fault or negligence * * * in the performance" of the Waterways contracts, as the word "loss" is used in sections 1 and 3 of the Act and defined in paragraphs 101.9 and 101.11 of Executive Order 9786. They do not purport to be a claim for the difference between the contract price for the performance of any of the Waterways contracts and the actual cost to Waterways for such performance, the claim involved in this action and presented to the Navy Department for the first time in February 1947. They are, in other words, claims for which, if established, the United States was liable at law to Waterways, and for the recovery of which Waterways was entitled to maintain an action at law against the United States.[1] And they were so treated when finally adjudicated in the bankruptcy court. They are not "equitable" claims within the meaning of the Act.

The Act has no relation to claims against the United States of the character stated in appellant's bills and invoices. On the contrary, the Act deals with an entirely different character of claims, namely, claims for which the United States was never by the force of the contracts obligated, and which but for section 201 of the First War Powers Act and the provisions of the Act of August 7, 1946, no executive or judicial branch of the Government could have entertained or allowed. Claims against the United States with which the Congress was concerned in the Act of August 7, 1946, are claims for losses which a department of the Government could have entertained under section 201 of the First War Powers Act; and claims allowable under the First War Powers Act are not such as the Government was obligated at law to pay, but claims whose recognition and allowance, in the opinion of the department concerned, were necessary to the national security, and whose allowance would, in the opinion of the department, "facilitate the prosecution of the war." Title 1, Paragraph 3, Executive Order 9001, December 27, 1941, 50 U.S.C.A.Appendix, § 611 note, 6 F.R. 6787. The primary purpose of the First War Powers Act was the promotion of the national defense in time of great emergency. Contractors were the incidental beneficiaries of the Act. The purpose of the Act of August 7, 1946, as shown by the language of the Act and its legislative history[2] was to secure equal

---

[1] 28 U.S.C.A. §§ 1346, 1491.

[2] H. Rep. 2576, 79th Cong., 2d Sess., pp. 1-21, July 19, 1946; U.S.Code Cong. Service, 1946, p. 1443.

and equitable treatment to contractors in the consideration of claims of the kind which the First War Powers Act authorized certain departments of the Government to allow.

The judgment of the District Court is affirmed.