**EVANS et al. v. UNITED STATES.**

No. 14613.

United States Court of Appeals
Eighth Circuit.

Dec. 4, 1952.

Rehearing Denied Jan. 16, 1953.

Tyree C. Derrick, St. Louis, Mo. (Don O. Russell, St. Louis, Mo., on the brief), for appellants.

Isidor Lazarus, Attorney, Department of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., George L. Robertson, U. S. Atty., William V. O'Donnell, Asst. U. S. Atty., St. Louis, Mo., and Edward H. Hickey, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellants brought this action against the United States in the United States District Court for the Eastern District of Missouri. The complaint alleged:

1. That the action was brought under the War Contracts Hardship Claims Act of August 7, 1946, as amended, 60 Stat. 902, 62 Stat. 992, 41 U.S.C.A. § 106 note, "for relief from losses incurred between September 16, 1940, and August 14, 1945," without negligence on the part of appellants in the performance of a contract entered into between appellants and the United States, under which appellants agreed to furnish the materials and to perform the

work for the construction of a sewage disposal plant at a proposed internment camp at Weingarten, Missouri, "in accordance with specifications, schedules and drawings" attached and made a part of the contract, for the contract price of $94,376.75;

2. That appellants began work on September 9, 1942, and continued work in accordance with the specifications and the contract until December 29, 1942, when they were notified by the United States that their contract was terminated;

3. That on the 13th day of January, 1943, the United States entered into a contract with one Fischer for the completion of the work for a price of $47,896;

4. That appellants incurred a loss, exclusive of profits and overhead, in the amount of $40,952.22 in their work under the contract;

5. That included in the appellants' loss is the claim of the United States against appellants for $12,750.42 representing alleged cost to the United States in the completion of appellants' contract;

6. That appellants' loss was not the result of negligence on their part in the bidding of the contract or in its performance;

7. That appellants' loss was caused by

(a) the failure of the United States to pay when due for extra work performed by appellants at the request of the United States,

(b) the refusal of the United States to pay appellants' estimates for work performed as and when due under the contract,

(c) the encountering by appellants of unusual soil and rock conditions not indicated on the plans and specifications for the work to be done, increasing the unit cost of appellants under the contract,

(d) the requirement by the United States that appellants employ overtime and additional labor to speed up the work under the contract,

(e) the requirement by the United States that appellants employ labor at a higher wage scale than called for in the wage schedules set out in the specifications without compensating appellants for the excess cost incurred,

(f) the unforeseen change in labor conditions brought about by the war effort, causing a constant turnover of employees and loss of efficient man hour labor,

(g) the inability of appellants to obtain necessary equipment because of the use of such equipment on other projects having the same or higher priority rating than appellants,

(h) the unwarranted interference in the work by the supervisory personnel of the United States Engineers,

(i) the improper inspection of equipment and materials to be used on the project, and the furnishing of equipment unfit for use by the supervisory employees of the United States,

(j) the excessive charges made by the United States on Government owned equipment, and

(k) the wrongful act of the United States in letting a contract for completion of the project at a price in excess of the reasonable value of the work to be done. Appellants also alleged that they had complied with all the regulations governing the settlement of claims under the War Contracts Hardship Claims Act. They ask for "a determination by the Court of the equities involved in this claim, and a judgment in the sum of $40,952.22," and for an order directing the United States to pay the judgment.

The United States answered, denying the allegations of the complaint, alleging that appellants failed to state a claim upon which relief could be granted by the District Court, and by way of counterclaim alleged that appellants abandoned performance of their contract before completion, making it necessary for the United States to employ another contractor to complete the work at a cost of $11,933.72 in excess of the price stipulated in the contract with appellants. The United States asked for judgment on its counterclaim.

In reply to the counterclaim the appellants admitted that they refused to complete the contract on which the action was brought because the United States itself

breached the contract, by refusing to give appellants credit for the correct amount of rock excavation performed by appellants and by refusing to allow appellants the just and equitable price for such excavation and for other work required under the contract.

The District Court entered judgment for the United States on the complaint of the appellants and on the cross complaint of the United States.

In appellants' action the District Court made the following findings of fact:

"3. Plaintiffs did not file with defendant's agency, the War Department, on or before August 14, 1945, a 'Written Request for Relief' within the meaning of Section 3 of the Lucas Act.

"4. Plaintiffs did not file 'Written Request for Relief' prior to August 14, 1945, under the First War Powers Act with the War Department or an agency concerned with the contract."

On these findings the court concluded that the appellants were not entitled to recover.

On the counterclaim the court made the following findings of fact:

"8. Plaintiffs refused and failed to prosecute the work with such diligence as would have insured its completion within the time specified in Article 1 of the contract or any extension thereof and failed to complete the work within such time.

"9. The defendant by written notice to plaintiffs terminated the right of plaintiffs to proceed with the work after being advised by the plaintiffs that they could not proceed further toward completion of the contract.

"10. Under the provisions of Article 9 * * * [of the contract] the defendant had the right to take over the work and prosecute it to completion because of the refusal and failure of plaintiffs to prosecute the work with proper diligence and the defendant took over the work."

The court found that the appellants were indebted to the United States in the amount claimed on the counterclaim, and entered judgment in that amount with interest at 6 per cent from September 5, 1945.

We agree with the District Court that appellants were not entitled to a judgment against the United States in an action under the War Contracts Hardship Claims Act. In the opinion of this court in Fogarty v. United States, 8 Cir., 176 F.2d 599, as well as in the opinion of the Supreme Court in the same case, affirming the judgment of this court, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10, the purpose of Congress in enacting the First War Powers Act and the War Contracts Hardship Claims Act and the relation of the Acts one to the other are explained in detail. In the opinion of this court in the case the provisions of both Acts, as well as Executive Order Oct. 5, 1946, No. 9786, issued by the President pursuant to section 1 of the War Hardship Claims Act, are set out at length and need not be repeated here. It is sufficient to say that by section 201 of the Act of December 18, 1941, known as the First War Powers Act, 55 Stat. 838–839, 50 U.S.C.A.Appendix, § 611, the President was given the power to authorize any Government agency to make amendments and modifications of contracts for war supplies without regard to consideration in cases where, in the judgment of the President, the exercise of the powers granted would aid in the prosecution of the war. During the war the War and Navy and other departments of the Government exercised the powers granted to save war contractors from losses due to causes entirely beyond their control and thus to make possible the successful and timely completion of works and contracts vitally necessary to the prosecution of the war. Necessary to the exercise of the powers conferred by the Act was a finding by the department involved that the action was required to "facilitate the prosecution of the war." While contractors were beneficiaries of the Act, the primary purpose of Congress in enacting it was not the protection of contractors who were threatened with loss as the result of a rise in prices and scarcity of materials and labor, but the protection of the nation at a time of great emergency.

After August 14, 1945, a difference of opinion arose among the agencies and departments of the Government concerned as

to whether they could certify that the granting of the relief authorized by the First War Powers Act was necessary in the prosecution of a war which had ended. Some contractors who had suffered losses through no fault or negligence of their own and for reasons beyond their control were denied relief by one department in circumstances in which relief was granted by another. This situation brought about the passage of the War Contracts Hardship Claims Act, popularly known as the Lucas Act. As originally approved on August 7, 1946, that Act, so far as pertinent to the present case, provided that where work, supplies, or services had been furnished the United States between September 16, 1940, and August 14, 1945, under a contract with any agency of the Government authorized to enter into contracts and amendments or modifications of contracts under the First War Powers Act, and where the party furnishing the work, supplies, or services had filed a written request for relief with the interested department on or before August 14, 1945, for losses sustained without fault or negligence on the part of the claimant, the department concerned might grant the relief requested where claims for relief were presented to the department within six months of the approval of the Act. Section 6 of the Act provided for the review of departmental action on such claims by any United States District Court of competent jurisdiction. Section 6 of the original Act was amended by an Act of Congress enacted June 25, 1948. As amended the section provides that a claimant under the Act dissatisfied with the action of the department of the Government in either granting or denying his claim was given the right within six months to file a petition with the Court of Claims for review of the departmental action, "or, if the claim does not exceed $10,000 in amount or suit has heretofore been brought or is brought within thirty days after the enactment of this amendatory act, with any Federal district court of competent jurisdiction".

Appellants' claims for relief under the War Contracts Hardship Claims Act were denied by the War Contracts Hardship Claims Board of the War Department on December 4, 1947, the Board holding that appellants had not given the written notice of their claims prior to August 14, 1945, as required by section 3 of the Act. The Board also ruled that it could not find on the evidence before it that the losses, if any, for which relief was sought were not the result of the fault or negligence on the part of appellants. Appellants brought this action in the District Court for the Eastern District of Missouri on June 2, 1948, within six months after this decision of the War Department and before the enactment of the amendment to section 6 of the Act. Their claim, although in excess of $10,000, was within the jurisdiction of the District Court.

To sustain their claim for relief under the War Contracts Hardship Claims Act, the burden was on appellants to prove that prior to August 14, 1945, they presented to the War Department a written request for relief of the character authorized by section 201 of the First War Powers Act. That relief was characterized by this court and the Supreme Court in the Fogarty cases as relief as a matter of grace and not as a matter of right. A written request for relief must not only have been presented to the War Department before August 14, 1945, but it must have been sufficient to apprise the War Department that it was being asked to grant relief solely as a matter of grace. Claims for relief as a matter of right, as, for instance, for damages resulting from a breach of contract by the War Department or for compensation earned under a contract and withheld by the War Department, afford no basis for an action under the War Contracts Hardship Claims Act. For such claims to which the appellants may have been entitled as a matter of right, appellants were given an adequate remedy by resort either to the District Court or the Court of Claims, depending upon the amount involved, under Title 28, U.S.C. §§ 1346 and 1491. Appellants contend that even if their claim against the United States was one enforceable at law, nevertheless they might obtain relief under the War Contracts Hardship Claims Act if, instead of pursuing the remedies granted by sections 1346 and

1491 of the Judicial Code, they abandoned their contract rights and requested relief as a matter of grace. This contention is explicitly denied in the Fogarty cases.

In determining the sufficiency of the writings on which appellants rely as written requests for relief under the War Contracts Hardship Claims Act, it is necessary to consider them in the light of the contract between appellants and the War Department.

On August 3, 1942, the appellants filed their application for consideration as construction contractors on contracts to be awarded by the War Department through competitive bidding or on negotiations. In this application appellants represented that the net worth of appellants was in excess of $168,000, that the cash available to them for financing construction work was $50,-000, that they had credit readily available to the extent of $500,000, and that their employees were all men of long experience in construction work under the supervision of appellants.

On the 13th of August, 1942, the War Department issued invitations to appellants and others to bid for the construction of a sewage disposal plant at Weingarten, Missouri. In response to the invitation six bids were received of which appellants' $94,376.75 was the lowest, and the highest was $156,567.00. The bid of appellants was accepted. In accordance with appellants' proposal, the construction work was to be fully completed within sixty days from the beginning of operations for the consideration stated in appellants' bid. The time for completion was later extended ten days, and the contract price increased to $104,-878.83 because of extra work added at the request of the War Department. Appellants' bid was in the form of unit prices for different items of the construction and material required by the contract.

Article 3 of the contract provided that the contracting officer of the War Department might at any time by written order make changes in the drawings or specifications of the contract within their general scope; that if such changes caused an increase or decrease in the amount due under the contract or in the time required for its performance, an equitable adjustment would be made and the contract modified accordingly in writing. The appellants were required to present a claim for adjustment within ten days of the receipt of a change order, with the provision that if the parties failed to agree with the adjustment to be made the dispute would be determined as provided in Article 15. Article 15 provided that disputed questions should be decided by the contracting officer, subject to appeal within thirty days from his decision to the head of the department, the decision of the head of the department to be conclusive upon the parties.

Article 4 of the contract provided that should the appellants encounter or the Government discover subsurface or latent conditions at the site materially different from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in the work of the character provided for in the plans and specifications, the contracting officer should promptly investigate the conditions and, on finding that they did so materially differ, should, with the approval of the head of the department, modify the contract to provide for any increase or decrease in the cost of the work to be done or for a change in the time required for completion resulting from such condition.

By Article 5 of the contract no charge for extra work or material was allowable to the appellants unless ordered in writing by the contracting officer. Under Article 9 the United States was given the right to terminate the contract on the failure of the appellants to prosecute the work with such diligence as to insure its completion within the agreed time. In the event of a termination by the United States for the reasons stated, it was provided that the United States might take over the work and complete it, by contract or otherwise, and hold the appellants liable for any excess cost to the United States. The contract provided for progress payments to the appellants during the performance of the contract, to be made semi-monthly upon estimates of work done and materials furnished by the

appellants. Ten per cent of each estimate was to be retained by the United States until 50 per cent of the work was completed. The appellants were required to pay laborers and mechanics such wages as were determined by the Secretary of Labor to be prevailing in the locality of the work on projects of similar character. The specifications fixed the wage rates per hour for pipe layers at 75 cents and for plumbers at $1.625. By the specifications the appellants were not required to bid on rock excavation and the contract contained no agreed price for rock excavation. The references in the contract and specifications were either to "excavation; structures" or "excavation; trench." The contract unit price for excavation structures was $1.75 a cubic yard and for excavation trench $2 a cubic yard. The specifications provided that: "In event the contractor is required to excavate solid rock from any excavated areas, an equitable payment will be made therefor in accordance with Article 3 of the contract."

■ The written requests for relief under the War Contracts Hardship Claims Act on which appellants rely are in the form of letters written by appellants to officers of the War Department and others between the dates of September 17, 1942, and November 29, 1943. In the letter of September 17, 1942, appellants requested an allowance of extra compensation for rock excavation encountered by them in the prosecution of the work. Since the contract in terms provided for the allowance requested, appellants were entitled to receive a fair allowance as of right under the contract. This letter was addressed to the War Department engineer in immediate charge of the work. It was a request for relief as a matter of right.

The letter of December 28, 1942, was addressed to the War Department engineer, the contracting officer of the War Department. This letter shows on its face that it was written in reply to a letter of December 23, 1942, from the contracting officer in the form of an order to the appellants to show cause why because of their failure to diligently prosecute the work the contract should not be terminated by the War Department under Article 9, the material parts of which were quoted in the letter. In their letter of December 28, 1942, the appellants made no request for relief nor did they claim a loss on the work done. Instead, they asserted that "in as much as we discovered during the progress of the work that the sub-surface at the site, is materially different from that ordinarily encountered in this type of work, and that our costs have mounted away over the estimated costs and we have found that our financial conditions have become so precarious * * * that the party financing our operations has refused to give us any further financial assistance. This lack of finances has in turn reflected in our inability to proceed any further with this contract." Appellants said nothing about the claim they now press, the refusal of the contracting officer to allow them extra compensation for the difficulty encountered. The record shows that the War Department allowed the appellants $8 a yard for the excavation of rock encountered at the construction site, and that in the final settlement of appellants' account they received credit at this rate for the number of yards excavated as determined by the War Department.

■ There was a dispute between the engineers in charge of the work and appellants as to whether some of the excavation encountered by them, variously described in the testimony as hardpan or cemented gravel, should be classified as solid rock. The appellants in their letter of September 17 requested allowances for rock excavation at $7.75 a cubic yard for general excavation and $11.75 for hand excavation. Later they raised their price for rock excavation to $15 a yard. The parties never agreed on the proper allowance, and appellants never appealed to the head of the War Department as they had a right to do under Article 15. The record supports the inference that this dispute had arisen before the letter of December 28, 1942, was written, and it is significant that the letter makes no reference to the dispute. Read literally, the letter is merely a notice of appellants' inability to proceed with the contract and of their withdrawal from it

because of their inability to finance it. In any event, it is not a request for any kind of relief. In the light of all the evidence and of the contract provisions, it was at most a charge of breach of contract by the United States.

In the letter of April 8, 1943, addressed to the Head of the Contract Division of the United States Army Engineers and written after appellants had abandoned the contract, appellants complain of the delay of the War Department in furnishing them a statement of the costs incurred by the United States in completing the work. They assert that the War Department had let the completion of their contract to a Mr. Fischer at an exorbitant price. The letter may be interpreted as a denial of liability to the United States for the costs incurred under the Fischer contract, but it is in the form of an objection to rather than a request for relief from this cost. In any event, under the terms of their contract the appellants were liable only for the reasonable costs incurred by the United States in its completion, and, if liable, were liable under the contract.

The letter of June 21, 1943, also written after appellants had abandoned the contract and after its completion by the United States under the contract with Fischer, and addressed to the War Department engineers, charges the United States with breaches of the contract resulting in damage to appellants, alleges that the amounts paid to Fischer for the completion of the contract were excessive, denies liability for the costs incurred under that contract, and asserts that if appellants were granted their rights under their contract they would be entitled to further payments from the United States instead of liability for the costs of completion of the contract. Insofar as this letter asserts any claim against the United States, it is based upon the terms of appellants' contract. The letter also suggests by way of compromise that appellants should be allowed the actual cost to them of the work they performed before abandoning the contract, surrendering any claim for profits.

All of the foregoing letters were addressed to the War Department and asserted claims as of right under appellants' contract. None of them asserted claims for relief as a matter of grace.

Of the other letters, two were addressed to the Truman Committee of the United States Senate and not to the War Department as required by the Act on which appellants rely. These letters consisted largely of charges of inefficiency and breach of contract upon the part of the War Department engineers in charge of the work. The only other letter relied on by appellants as a request for relief was addressed to the Chairman of the War Department Price Adjustment Board under date of November 9, 1943. The letter begins with a request for a hearing on the renegotiation of appellants' contract. The basis for the request is stated as follows:

"We encountered rock formations during the excavation, for which rock the Engineers refused to allow us an equitable amount of money, and we were seriously handicapped by rapidly changing adverse labor conditions.

"Mr. McCormack and myself put some $16,000 of our own money into this job and were unable to secure finances to complete the project because of the very large loss which was apparent and which had developed due to our inability to collect extras to which we, in our opinion, felt we were justly entitled.

"It finally became necessary to advise the Engineers that under the circumstances we could proceed no further with the contract * * *."

While this letter is in form a request for renegotiation of the contract the basis asserted for it is an alleged breach of the contract by the United States in refusing to allow a fair price for rock excavation and for extra work required by the engineers. The relief requested in this letter is relief asserted as a matter of right under the contract, with one possible exception, "rapidly changing adverse labor conditions." But as to this there is no proof in the record as to what loss, if any, appellants suffered as the result of difficult labor conditions.

■ It is enlightening to compare these requests with the grounds for relief asserted in the complaint. Grounds (a), (b), (c), (d), (e), (h), (i), (j), and (k) of the complaint charge the United States with breaches of the contract to appellants' damage. Ground (f) of the complaint refers to the unsettled labor conditions with which appellants were confronted, and ground (g), to the inability of appellants to obtain necessary equipment because of the use of such equipment on other projects having a higher priority rating than appellants. As to ground (f), as noted above, the record is devoid of any proof as to any loss sustained by appellants because of it. And, as to ground (g), the appellants testified that they contracted to complete the work within sixty days, knowing at the time that material and equipment necessary to the performance of the contract could not be obtained within sixty to ninety days of the completion date. Ground (j), which alleges the excessive charges made by the United States on its equipment is related to ground (g). The evidence shows, however, that the appellants had never ordered all the material and equipment necessary to the performance of their contract at the time they abandoned the work, and that they rented needed equipment from the War Department. The evidence of appellants is that the rental was made upon an oral agreement between them and the Army engineers for a payment of rent on the basis of the actual hours the machinery was used in the construction work, and that the War Department violated this contract by refusing to accept the rent as agreed upon and insisting upon rent payable by the month whether or not the machinery was used, resulting in an excessive charge to appellants. Grounds (g) and (j) are therefore under the evidence charges of breach of the contract. This comparison shows, as does appellants' reply to the counterclaim of the United States, that in their complaint, as well as in the requests on which they rely for relief under the War Contracts Hardship Claims Act, the appellants charge the United States with breach of the contract. Appellants may not convert an action for damages for breach of contract into an action for relief as a matter of grace.

It follows from what has been said that the District Judge was correct in holding that the appellants were not entitled to maintain this action under the War Contracts Hardship Claims Act.

■ The judgment in favor of the United States on its counterclaim must be reversed. On receipt of appellants' letter of December 28, 1942, the United States by letter of December 29, 1942, terminated the contract under Article 9 and took over the work. Later the work of completion was let to Fischer. Apparently the District Judge accepted appellants' letter of December 28, 1942, as a voluntary refusal to proceed with the contract, not because of breaches of the contract by the War Department, but solely because of appellants' inability to complete it. Read literally, the letter justifies such an interpretation, but aside from this, the United States offered ample evidence to support the finding that the appellants, after having been invited to bid on the contract on the basis of their assurance of ample resources in men, machinery, money, and experience, began the work without either; and solely because of the absence of the necessary qualifications, equipment, and financial resources, they failed to prosecute the work with the diligence which their contract required and their bid assured. The evidence was sufficient to sustain the court's finding that the appellants and not the War Department breached the contract.

■ Appellants having failed to prosecute the work they agreed to do in the manner required by their contract became liable to the United States for the reasonable cost of the completion of the work. But what this reasonable cost was the evidence on behalf of the United States completely fails to establish. The evidence relied on is a certificate of the General Accounting Office showing a balance due the United States in the amount awarded by the District Judge. But this certificate was made by the General Accounting Office accepting as correct the War Department's statement of the work done by appellants

before abandonment of the contract and the sum paid Fischer for its completion as the reasonable cost of the work done. For example, the General Accounting Office charged the appellants with $5,977.50 for rental of equipment furnished it by the United States when no testimony appears in the record to substantiate this claim or to deny the appellants' assertion that the rent charged was not in accordance with their agreement with the Army engineers. The General Accounting Office accepted without any proof that it was fair and reasonable the amount paid Fischer to complete the contract, in the face of appellants' persistent assertion that it was unreasonable and excessive, supported by an audit of the Fischer contract by the senior accountant of the Kansas City Engineers District of the War Department, which showed that the total cost to Fischer for the work done in completing appellants' contract, including a normal allowance for profits and overhead, was only $26,951.76, which deducted from the amount paid Fischer indicated an excess profit to Fischer of approximately twice the amount of the United States' counterclaim. While the United States, on a breach of their contract by appellants, had the contract right to take over the work and complete it and charge the reasonable and necessary cost to appellants, it was under the burden in establishing its counterclaim to prove that the cost to it resulting from appellants' breach was necessary and reasonable. Other than the evidence mentioned above, there is no evidence in the record to sustain this burden. It is true that the same accountant made an analysis and investigation of the work done by appellants to determine the amount earned by them for their part performance of the contract computed according to the unit prices provided in their contract and the allowances for extra work and changed conditions made by the Army engineers. Adding the result of this computation to the amount paid to Fischer under his contract, he determined the cost of the work to the United States under both contracts and the loss sustained by the United States by reason of appellants' abandonment of the work. But in this computation he accepted as reasonable and necessary the amount paid to Fischer under his contract.

The judgment on appellants' complaint is affirmed. The judgment in favor of the United States on its counterclaim is reversed. This action is remanded to the District Court for further proceedings in conformity with this opinion.