**HUB INDUSTRIES, Inc. v. UNITED STATES.**

No. 49043.

United States Court of Claims.

Sept. 30, 1953.

Peter J. George, New York City, for plaintiff.

Thomas O. Fleming, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This is an action under the War Contract Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 869, 992, 41 U.S.C.A. § 106 note, to recover from the United States the sum of $179,762.84 as the net loss alleged to have been sustained by plaintiff without fault or negligence on its part in the performance of various Government contracts between September 16, 1940, and August 14, 1945.

█ The defendant has moved for summary judgment on the ground that there is no genuine issue as to any material fact and that as a matter of law it is entitled to judgment for the reason that plaintiff did not file a proper "written request for relief" with respect to its losses within the meaning of Section 3 of the Lucas Act. The burden of showing the absence of a genuine issue of material fact which would justify granting summary judgment is upon the party asking for summary judgment. Assets Service Corporation v. United States, 121 Ct.Cl. 308, 312.

The plaintiff's claim pertains to a number of contracts, and the parties have discussed the contracts and alleged requests for relief in eight different groups. As to whether the documents relied upon by the plaintiff are proper written requests for relief with respect to the losses plaintiff has allegedly incurred under these contracts, Section 3 of the Lucas Act provides in part that:

"Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * * ."

In Fogarty v. United States, 340 U.S. 8, 13, 71 S.Ct. 5, 8, 95 L.Ed. 10, the Supreme Court held that a "written request for relief" need not be in any particular form, but "must be sufficient to apprise the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of war contracts."

### Contract No. W535–ac–26295

This contract related to the manufacture and delivery of various main landing gear assemblies and nose wheels on a cost-plus-fixed-fee basis. Plaintiff alleges that it sustained a loss of $79,945.48 due to the resident auditor's refusal to allow the entire amount of plaintiff's overhead costs which plaintiff allocated to this contract. The issue regarding this contract is whether plaintiff's letters of September 30, 1943, December 28, 1943, February 18, 1944, and November 22, 1944 are proper written requests for relief.

█ The letters of September 30, 1943 and December 28, 1943 notified the defendant that plaintiff's actual costs would exceed its estimated costs; and, in effect, requested that its estimated costs be increased; the letter of December 28, 1943 stated that the additional costs were necessary. Subsequently, a change order dated January 31, 1944 was issued which amended Article 2 of the contract so as to increase plaintiff's estimated cost by the amount requested. This amendment to the contract was done pursuant to the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., and Executive Order No. 9001, 50 U.S.

C.A.Appendix, § 611 note, on the ground that plaintiff's original estimates were too low and additional money was urgently needed to complete the contract work. The change order, however, granted plaintiff the full amount of the *estimated costs* requested, and consequently these letters of September 30, 1943 and December 28, 1943 were not requests for relief with respect to plaintiff's losses or *actual costs* under this contract which allegedly resulted from the resident auditor's subsequent refusal to allow the amount of overhead costs which plaintiff allocated to this contract.

The letter of February 18, 1944 notified the contracting officer as to the reasons why the plaintiff had not earned certain discounts amounting to $2,545.37 and deducted by the Army audit staff from plaintiff's allowable costs under Article 3(e) of the contract. Article 3 (e) provided that discounts which would have accrued to the benefit of the plaintiff except for fault or neglect on its part should be deducted from plaintiff's gross costs, but that such benefits lost through no fault of the contractor should not be deducted from such gross costs. In its letter, plaintiff attempted to justify its failure to earn the discounts on the ground that such was not due to its fault or neglect but was due to unavoidable circumstances relating to the inspection of materials. It requested that the contracting officer dispose of the issue so that plaintiff would be in a position to recover this amount. We think this was not a request for extra-legal relief, but a request that the contracting officer determine that the discounts were lost through no fault or neglect of the plaintiff and therefore under the contract terms should not be deducted from its gross costs. The claim was therefore not one for extra-legal relief. See Evans v. United States, 8 Cir., 200 F.2d 201, 205, 207–208; Owens v. United States, 104 F. Supp. 1015, 123 Ct.Cl. 1.

The letter of November 22, 1944 to the resident auditor merely proposed two methods of allocating plaintiff's overhead expenses on its fixed-price contracts and its cost-plus-fixed-fee contract. This letter proposed that certain overhead items having a direct relationship to labor be distributed on the basis of direct labor costs, but that other overhead expenses consisting of general administrative expenses or indirect factory costs (not directly related to productive labor) be distributed on the basis of prime costs, i. e. the total costs of direct labor plus direct material.

It appears from this letter that plaintiff's contracts covered more than one year, and therefore would require the distribution of overhead, in part for separate accounting periods. Because of differences in inventory for production on its cost-plus-fixed-fee contract as compared with fixed-price contracts, plaintiff suggested that only 50% of the increase or decrease in inventories during the second year of its operations be considered in distributing those overhead costs distributable upon its prime costs.

The plaintiff was entitled under Article 3(b) of the contract and under the Treasury Department regulations and Treasury Department Decision 5000 (both referred to in Article 3(b) ) to have this part of its overhead costs allocated as part of its allowable costs by a determination by the contracting officer of such overhead costs were "the proper proportion of any indirect costs (including therein a reasonable proportion of management expenses) incident to and necessary for the performance of the contract or subcontract." See 26 C.F.R. Supp.1940 § 26.9. Thus, here also, the claim contained in plaintiff's letter, if fully established, would have entitled it to these overhead costs under the terms of the contract, and the letter cannot be construed as a request for extra-legal relief. See Evans v. United States, supra; Owens v. United States, supra.

**Purchase Order 33375 Under Fleetwings, Inc., Contract No. W535–ac–20857**

This purchase order and sub-contract with Fleetwings, Inc., were for the manufacture and delivery of 200 sets of landing gear, a number of tools, and a number of spare parts for the landing gear sets on a cost-plus-fixed-fee basis. Plaintiff

alleges that it lost $40,884.13 under this purchase order. The letters relied on as requests for relief are those dated February 19, 1944, April 19, 1944, and December 4, 1944.

The letter of February 19, 1944 related to the loss of the 10-day discounts and is substantially identical to the letter of February 18, 1944 under Contract No. W535–ac–26295 discussed supra, and we think this was not a request for relief for the same reasons there given.

■ The letter of April 19, 1944 stated that the appropriations for plaintiff's costs under the subcontract were insufficient to compensate plaintiff for its expenditures, and it requested that an additional appropriation be made to compensate it for all its costs expended on the contract. Under Article 3(a) and (b) of the contract, the plaintiff was to receive not more than 20% more than the estimated cost of the sets of landing gear (Article 3(a)) and not more than the estimated cost of the work relating to the spare parts (Article 3(b)). Plaintiff contends in its brief that it was allowed part of this as shown by a memorandum dated December 2, 1944 and signed by the Chief of the Field Service Branch, and that this circumstance indicates that the additional expenditure requested was obtainable only as a matter of grace and not as a matter of right under plaintiff's contract. This memorandum, however, referred to a "Legal Department" interpretation of the contract and concluded that plaintiff's prime contractor was entitled to full reimbursement of its costs. It also stated that plaintiff's prime contractor finally agreed on a settlement on these items.

The "Legal Department" opinion referred to is dated November 22, 1944, and mentions that subsequent supplemental agreements modified the contract. It stated that there was no ceiling on the costs of the spare parts and that the prime contractor and the contracting officer might agree upon an allocation for purposes of a negotiated settlement. These supplemental agreements mentioned in the "Legal Department" opinion are not in evidence, and it may be

that plaintiff was entitled to full reimbursement of its costs under these supplemental agreements to the contract. If such be true, plaintiff's letter of April 19, 1944 would be a request for relief to which plaintiff was entitled under the terms of its modified contract and thus would not be a request for extra-legal relief. In the absence of these supplemental agreements and proof as to the negotiations and dealings of the parties, however, we are unable to conclude that there is no genuine issue of fact as to whether plaintiff's letter of April 19, 1944 was a proper "written request for relief" under the Lucas Act. See Assets Service Corporation v. United States, 121 Ct.Cl. 308, 312.

The letter of December 4, 1944 submitted a proposed settlement of plaintiff's contract, and it requested that the Army Air Forces approve the proposed settlement. The proposed settlement relates partly to some of the same items as does the letter of April 19, 1944 above. For the same reasons set forth above regarding the letter of April 19, 1944, it is not clear whether this was a proper request for relief.

### Contract No. W535–ac–28783

■ This contract was for an endless track landing gear on a cost-plus-fixed-fee basis, and it required that certain engineering drawings and data be furnished without additional cost. Plaintiff relies on its letters of May 27, 1944 and November 22, 1944 as its requests for relief under the Lucas Act.

This letter of May 27, 1944 stated that the cost of furnishing the engineering data and drawings required by the contract would be approximately $7,256.00. Plaintiff requested that it be allowed to deviate from this requirement of the contract so as to relieve it of this cost on the ground that no production was anticipated on the basis of the data and drawings. This request was denied, however, by a memorandum dated July 5, 1944 from Lt. Bullard, the area production officer.

Defendant argues that this letter of May 27, 1944, was not a request for

extra-legal relief because the contracting officer could have allowed the request under Article 5 of the contract, which authorized the contracting officer to "direct the omission of work covered by the contract." Because plaintiff did have a remedy under this Article of the contract, we are persuaded that this letter of May 27, 1944, was a request for the type of relief which was available within the framework of plaintiff's contract and was thus not a request for extra-legal relief.

The letter of November 22, 1944, to the resident auditor was not a request for relief for the reasons given with respect to Contract No. W535–ac–26295 supra.

### Contract No. W33–038–ac–630

■ This contract was for the fixed amount of $999.00 and was terminated by the defendant. Plaintiff alleges it lost $9,060.00 on the contract. As its request for relief, plaintiff relies on a standardized Government "Settlement Proposal" form dated November 30, 1944, which listed certain termination costs it proposed to include in the settlement of the contract.

This "Settlement Proposal" form, on its face, showed that plaintiff had incurred losses inasmuch as its costs exceeded the contract price by over $9,000.-00. Because it requested reimbursement for costs which plaintiff manifestly was not entitled to under the terms of its contract, it appears to be a sufficient request for extra-legal relief under the Lucas Act. See Modern Engineering Co. v. United States, 83 F.Supp. 346, 113 Ct.Cl. 272, 274.

### Purchase Orders Nos. 18448D, 18449D, 19493D, and 343.430779

Regarding these purchase orders with Consolidated Vultee Aircraft Corporation, plaintiff relies on the letter of March 13, 1944, a telegram of August 13, 1945, and another standardized Government "Settlement Proposal" form like the one discussed above pertaining to Contract No. W33–038–ac–630 as its requests for relief.

■■ The letter of March 13, 1944 requested that a directive be issued to the contractors of the B–24 providing for the procurement and installation of the Hub power panels. This letter cannot be construed as a request for extra-legal relief for the reason that it requests at most that a contract or purchase order be executed. It did not ask for any reimbursement of any losses or costs. The telegram of August 13, 1945 merely asked the prime contractor to confirm in writing its oral refusal to pay certain costs and is in no way a request for extra-legal relief.

The standardized Government "Settlement Proposal" form set forth certain termination costs in attached schedules.

■ Plaintiff alleges that payment for certain experimental expenses was requested in the settlement, and it also contends that the Army Air Forces disallowed this request on the ground that plaintiff was not entitled to the expenses under the purchase orders. Because the purchase orders are not in evidence, it cannot be concluded that plaintiff's "Settlement Proposal" did not contain a request for extra-legal relief under the Lucas Act. Assets Service Corporation v. United States, supra.

### Purchase Order No. 38698A

■ This purchase order was for the manufacture of 472 main selector valves at $111.00 each, and the order was terminated. Plaintiff's letters of May 18, 1943, June 16, 1943, February 8, 1944, and a preliminary cancellation cost statement are relied on as plaintiff's requests for extra-legal relief regarding this purchase order.

The letter of May 18, 1943 advised the Consolidated Vultee Aircraft Corporation that plaintiff would send a bill for the five sets of precision valves on a cost plus basis rather than on a fixed $111.00 per set basis, and there is nothing in the letter to indicate that plaintiff was requesting any extra-legal relief. The letter of June 16, 1943 merely set forth plaintiff's quotation for additional valves called for by a change order and

likewise is not a request for any extra-legal relief.

The letter of February 8, 1944, addressed to the Consolidated Vultee Aircraft Corporation and the preliminary cancellation cost statement relative to plaintiff's actual costs exceeding its estimated costs do not show on their face that they were filed with the Government agency involved. Plaintiff alleges in paragraph 6 of its petition, however, that its prime contractor submitted the requests for relief to the agencies involved. From the purchase order in evidence, it does not appear that this letter and the attached cost statements requested relief which was available under plaintiff's purchase order and therefore we are unable to conclude that there is no genuine issue of fact as to whether these documents requested extra-legal relief. Assets Service Corporation v. United States, supra.

Contract No. W30–053–ac–561; (Contract No. W535–ac–15678)

 Under this contract which was also canceled, plaintiff relies on a group of concession agreements and a standardized Government "Settlement Proposal" form dated July 3, 1945, on which are listed various items of cost to be included in a proposed settlement.

The concession agreements make no request for extra-legal relief, but because of the fact that the contract is not in evidence, it cannot be concluded that plaintiff's "Settlement Proposal" requested relief to which it was entitled under the contract and therefore did not request extra-legal relief. There thus appears to exist a genuine issue of fact as to whether the "Settlement Proposal" form was a request for extra-legal relief. See Assets Service Corporation v. United States, supra.

Contract No. W33–038–ac–81641
Contract No. W33–038–ac–6842

 The standardized Government forms here which contain plaintiff's set-tlement proposals are dated October 8, 1945 and November 14, 1945, and thus are not proper requests for extra-legal relief. This is for the reason that Section 3 of the Lucas Act requires that the requests for relief be filed with the Government agency or department concerned on or before August 14, 1945. Owens v. United States, 104 F.Supp. 1015, 123 Ct.Cl. 1, 9.

### Conclusion

In examining plaintiff's petition, it appears that plaintiff has failed to allege what profits it earned in performing other Government contracts between September 16, 1940 and August 14, 1945 which are not enumerated in its claim. Exhibit B to plaintiff's petition seems to indicate that there were other Government contracts under which plaintiff might have earned profits, and under the Lucas Act such profits must be deducted from plaintiff's losses in order to determine plaintiff's net loss on all of its Government contracts during the statutory period. Plaintiff's exhibit B does not adequately set forth its net loss on this basis, and plaintiff should amend its petition accordingly.

The defendant's motion for summary judgment is granted and the petition is dismissed as to that part of plaintiff's claim regarding Contract No. W535–ac–26295, Contract No. W535–ac–28783, Contract No. W33–038–ac–81641, and Contract No. W33–038–ac–6842, but is denied as to that part of plaintiff's claim relating to Purchase Order 33375 under Fleetwings, Inc. Contract No. W535–ac–20857; Contract No. W33–038–ac–630; Purchase Orders Nos. 18448D, 18449D, 19493D, and 343.430779; Purchase Order No. 38698A, and Contract No. W30–053–ac–561 (Contract No. W535–ac–15678).

It is so ordered.

JONES, Chief Judge, and MADDEN WHITAKER and LITTLETON, Judges concur.