**HUB INDUSTRIES, Inc.**

v.

**UNITED STATES.**

No. 49043.

United States Court of Claims.

April 2, 1958.

Peter J. George, New York City, for plaintiff.

Edward L. Metzler, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

This is an action under the War Contract Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended, 62 Stat. 869, 992, 41 U.S.C. § 106 note, 41 U.S.C.A. § 106 note, to recover from the United States the sum of an alleged net loss which plaintiff claims it sustained without fault or negligence on its part in the performance of various Government contracts and subcontracts between September 16, 1940, and August 14, 1945.

The case was before us in 1953 when defendant moved for summary judgment on grounds that plaintiff had failed to file a proper "written request for relief" with respect to its losses within the meaning of section 3 of the Lucas Act. We sustained defendant's motion as to four of plaintiff's claims, but denied it as to five of its claims remanding these latter claims for hearing before a trial commissioner. Hub Industries, Inc., v. United States, 1953, 115 F.Supp. 450, 126 Ct.Cl. 239. We now have before us the report of the trial commissioner, together with the exceptions and briefs of both parties.

As the hearing developed, a number of issues arose which are now before us for determination. These are: (1) whether plaintiff sustained a net loss on all its contracts and subcontracts under which work, supplies, or services were furnished for the Government between September 16, 1940, and August 14, 1945; and, (2) with respect to each of the five claims upon which plaintiff seeks relief, (a) whether an adequate written request for relief was filed within the meaning of section 3 of the Lucas Act, (b) whether a loss was incurred between September 16, 1940, and August 14, 1945, on

such loss incurred was without fault or the contract or subcontract upon which each claim is based and (c) whether any negligence on plaintiff's part.

■ Since we agree with the conclusion of the trial commissioner in respect to issue (1) above that the plaintiff did not sustain a net loss on all its contracts and subcontracts with the Government during the statutory period, we dispose of the case on that basis and find it unnecessary to resolve any of the questions pertaining to the specific claims upon which plaintiff seeks recovery. We think an analysis of the facts in the light of the provisions of the Lucas Act justifies this conclusion.

Section 2(a) of that act provides:

"In arriving at a fair and equitable settlement of claims under this Act, the respective departments and agencies shall not allow any amount in excess of the amount of the net loss (less the amount of any relief granted subsequent to the establishment of such loss) on all contracts and subcontracts held by the claimant under which work, supplies, or services were furnished for the Government between September 16, 1940, and August 14, 1945, * *."

If, therefore, a claimant has had a net profit from all his Government contracts and subcontracts during the statutory period, he is precluded from recovery under the Lucas Act even though he may have sustained losses on particular Government contracts or subcontracts. Plaintiff does not disagree that such is the law, but insists that it did sustain a net loss from Government work during the statutory period. We cannot agree.

During the period between September 16, 1940, and August 14, 1945, the plaintiff furnished work, supplies, or services for the Government under a total of 136 contracts and subcontracts. The plaintiff contends that it suffered a net overall loss amounting to $374,809.15 in the performance of such contracts and subcontracts. Defendant, on the other hand, maintains that the plaintiff realized an

overall profit of $432,930.86 from these contracts and subcontracts. The trial commissioner found that plaintiff did not suffer a net loss on all the contracts and subcontracts.

The wide variance between the calculations of plaintiff and defendant as to the profit or loss from plaintiff's operations during the statutory period results from disagreement between the parties as to whether certain items of expense or loss that plaintiff sustained during the period are properly allocable as part of the cost of performance of the Government contracts and subcontracts within the meaning of the Lucas Act and the regulations promulgated thereunder. (Exec. Order 9786, Oct. 5, 1946, 11 Fed. Reg. 11533, 3 C.F.R. 165 (1946 Supp.).) In all, there are eight items of expense or loss which were allocated by the plaintiff as part of the reasonable and necessary cost of performance of its Government contracts and subcontracts which are disputed by the defendant. We need not, however, discuss all of these disputed items. We are satisfied that three of the eight items are not properly allocable by the plaintiff to its cost of performing the Government work and, since the elimination of these three items leaves plaintiff with an overall net profit from Government work during the statutory period, it is precluded from recovery by section 2(a) of the Lucas Act, supra.

### I. Engineering and Royalty Fees Payable To Aircraft Components Limited

■ By an agreement dated May 20, 1940, Aircraft Components Limited, a British corporation, granted to the plaintiff for a five-year period the exclusive right to manufacture, license, sublicense, make, use, and sell any and all of its products in the United States, its territories, dependencies, and possessions. Aircraft Components agreed to furnish to the plaintiff all the technical data necessary for the successful utilization of its inventions and developments. As compensation, plaintiff agreed to pay to Aircraft Components, at the end of the

five-year period, a specified percentage of the manufacturing cost of all sales made by the plaintiff.

By February 28, 1944, plaintiff had incurred an obligation to Aircraft Components of $653,292.97 under the 1940 agreement. On February 28, 1944, a new agreement was entered into by the plaintiff and the successor of Aircraft Components whereby plaintiff's obligation of $653,292.97 under the 1940 contract was settled for $200,000 which latter sum was to be paid by plaintiff to the successor of Aircraft Components in installments.

The February 28, 1944 agreement released the plaintiff from paying $453,-292.97 of its obligation which had accrued under the 1940 contract. No part of this released sum was ever actually paid by the plaintiff, yet in computing its overall net loss, plaintiff charged against Government contracts $269,252.90 which represented the percentage of the *released obligation* of $453,292.97 allocable to such contracts.

In support of its position that a percentage of this released obligation should be charged to Government work, plaintiff maintains that the item "was a capital transaction and does not fall within the Lucas Act"; that it was treated by the Treasury Department as a cancellation of indebtedness and not construed as either income or reduction of expense to the plaintiff.

Frankly, we are unable to follow plaintiff's argument. The plain fact of the matter is that the entire cost to the plaintiff for what it received between May 20, 1940, and February 28, 1944, under the 1940 contract was $200,000. Plaintiff claims that because of its bookkeeping system the $453,292.97 which was released in 1944 should be classified as an expense on the ground that it was accrued during the years in which the obligation arose, rather than when it was paid. When the larger part of the obligation was cancelled in 1944 an in-creased profit resulted which plaintiff would have us disregard. Obviously, we cannot do so: the part of plaintiff's obligation which was released was not a cost at all and cannot be considered in determining plaintiff's overall net loss.

## II.   Entertainment Expenses

In computing its overall net loss, plaintiff allocated as part of its cost of performance of the Government contracts $71,522.91 which represents part of the plaintiff's entertainment expenses during the years 1942–1945.[1] The regulations established under the Lucas Act expressly exclude entertainment expenses from consideration in computing costs of performance. Exec. Order 9786, supra, para. 101.7e. We need not decide whether this regulation would be conclusive in all cases, since, in the present case, plaintiff wholly failed to establish that its so-called entertainment expenses were a reasonable and necessary cost of performing its contracts, and, as to the greater part of the item, failed even to show that the expenditures were in any way related to its Government work. The record fully supports the trial commissioner's conclusion that these entertainment expenses should be excluded from the computation of plaintiff's cost of performing Government contracts and subcontracts.

## III.   Synchronics, Incorporated

Plaintiff invested $61,000 in a wholly owned subsidiary known as Synchronics, Incorporated, which was organized to obtain and use certain patents. Plaintiff made advances of $21,011.24 to this subsidiary. The investment was ultimately abandoned by the plaintiff and the advances were written off its books as uncollectible. In computing its overall net loss, plaintiff charged its entire loss of $82,011.24 from the Synchronics venture to its cost of performing Government contracts.

Plaintiff obtained one Navy contract for $40,000 (Contract No. Noa (S) 4001)

---

1.   Plaintiff's total entertainment expenses for the period amounted to $83,135.66.

which contemplated the use of certain of the patents involved in the Synchronics organization.[2] However, the evidence is not sufficient to justify the conclusion that any part of the investment in or the advances to Synchronics was necessary for or used in the performance of that contract.

Plaintiff maintains, however, that it should be permitted to charge the losses incurred by its abandonment of the Synchronics venture to the cost of performing Government contracts "in view of the fact that the cost was incurred in anticipation of acquiring contracts" involving the patents they had obtained. Manifestly, such speculative investment costs cannot be considered as costs of performance of Government contracts and, therefore, cannot be considered in determining plaintiff's overall net loss. Cf. Arlington Trust Company, Inc., v. United States, 1956, 139 F.Supp. 556, 134 Ct.Cl. 251.

Since by the elimination of the items of expense and loss discussed above it appears plaintiff realized an overall net profit from all its Government work during the statutory period, it is our conclusion that plaintiff is precluded from recovery by the restrictive conditions of section 2(a) of the Lucas Act, supra. The petition will be accordingly dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

2. This contract was later terminated and plaintiff accepted a settlement thereunder. It is not a contract upon which plaintiff is presently suing.